**SIGNED this 26 day of May, 2006.**

_____
**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re | |
| MICHAEL LEE EANES, | No. 04-22687 |
| Debtor. | Chapter 7 |
| | |
| MARGARET B. FUGATE, TRUSTEE, | |
| Plaintiff, | |
| vs. | Adv. Pro. No. 05-2015 |
| THE CIT GROUP, | |
| Defendant. | |

### M E M O R A N D U M

APPEARANCES:

| | |
|---|---|
| Jason W. Blackburn, Esq. | John E. McDonald, Esq. |
| Bearfield & Blackburn | Joyce, Meredith, Fliticroft & Normand |
| Post Office Box 4210 CRS | Post Office Box 6197 |
| Johnson City, Tennessee 37602 | Oak Ridge, Tennessee 37831-3813 |
| *Attorney for Margaret B. Fugate, Trustee* | *Attorney for The CIT Group* |

**MARCIA PHILLIPS PARSONS**
**UNITED STATES BANKRUPTCY JUDGE**

In this adversary proceeding, the chapter 7 trustee seeks to avoid the lien of The CIT Group/Sales Financing, Inc. ("CIT") in the debtor's real property and manufactured home pursuant to 11 U.S.C. § 544(a). Presently before the court are the parties' cross motions for summary judgment. As explained below, the trustee's motion will be granted and CIT's denied. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(K).

I.

The parties have stipulated to the following facts. On May 27, 2000, prior to the filing of his bankruptcy case, debtor Michael Lee Eanes entered into an Auction Agreement Sales Contract for the purchase of "Tract #2, 1.777 Acres" in Horse Creek Village, Sullivan County, Tennessee. The notice circulated in connection with the auction indicated that two adjoining tracts, each 1.777 acres, were being sold and included a survey of the two tracts. Handwritten on the northernmost tract was "Lot 2, 115 Keeneland Court," with the southern tract marked as "Lot 1, 211 Kelso Court."

On May 31, 2000, four days after the auction, a survey of the two tracts was recorded in the Sullivan County, Tennessee Register's Office in Plat Book 50, page 477. The survey recorded appears in all respects to be identical with the survey shown on the auction notice but with one significant exception: the lot numbers have been switched. The northern lot is now identified as "Common Lot 1," although still with the 115 Keeneland Court address. The southern lot is now designated "Lot 2," but still with the 211 Kelso Court address.

On June 27, 2000, Mr. Eanes received a warranty deed for the purchased property from the Horse Creek Village Homeowners Association. Consistent with the purchase contract, the property conveyed in the deed is described as, "Being all of Lot 2 of the Common Area of Horse Creek Village Section A as shown on plat recorded in Plat Book 50, Page 477, by a survey of John R. Mize, RLS #891 in the Register's Office for Sullivan County, Tennessee." Due to the switch in lot numbers, reference to the recorded survey reveals "Lot 2" to be "211 Kelso Court." The only reference in the warranty deed to a particular street address is with respect to the party responsible for the payment of property taxes: Mr. Eanes is listed with an address of 115 Keeneland Court, Kingsport, Tennessee 37660. The warranty deed was duly recorded in the Sullivan County, Tennessee Register's Office on June 28, 2000.

2

Mr. Eanes' purchase of the real property was financed by CIT, which simultaneously therewith, also financed Mr. Eanes' purchase of a 1999 Silouette SL101 manufactured home. Documents executed by the parties on June 27, 2000, in connection with transaction included a Compliance Agreement that listed Mr. Eanes' address as 115 Keeneland Court, Kingsport, Tennessee, a Settlement Statement that listed the property location as "Lot 2 Horsecreek Village, Kingsport, Tennessee," and a "Deed of Trust, Security Agreement and Assignment of Leases and Rents." The latter document listed Mr. Eanes as Borrower and his address as "115 Keeneland Court, Kingsport, TN 37660." CIT is identified as lender, with the deed of trust to secure payment of a debt in the principal amount of $78,428.72. The granting clause of the deed of trust reads as follows:

> Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in **SULLIVAN** County, Tennessee: which has the address of **115 KEENELAND COURT**, **KINGSPORT**, **SULLIVAN** County, Tennessee 37660 ("Property Address");
>
> THIS DEED OF TRUST ALSO SERVES AS A FIXTURE FILING.
>
> **SEE PAGES 2, 3, 4, 5, 6, 7, 8 and 9 FOR ADDITIONAL IMPORTANT TERMS**
>
> Together with all the improvements (including, without limitation, the manufactured housing unit specifically identified as follows:
>
> | 1999 | silouette | SL101 | 6026AB |
> |---|---|---|---|
> | year | make | model | serial number |
>
> now or hereafter erected or installed on the property, all personal property upon the Property, and all easements . . . . All of the foregoing is referred to in this Deed of Trust as the "Property."

As indicated in the granting clause, the deed of trust has nine numbered pages, with the signature of Mr. Eanes and the acknowledgment on the ninth page. A tenth unnumbered page of the deed of trust sets forth the following "more particularly described" description:

> Being all of Lot 2 of the Common Area of Horse Creek Village Section A as shown on plat recorded in Plat Book 50, Page 477, by a survey of John R. Mize, RLS #891 in the Register's Office for Sullivan County, Tennessee.
>
> Being the same property conveyed to Michael L. Eanes from Horse Creek Village Homeowners Association, Inc. a Corp., by Warranty Deed dated June 27, 2000, of record June 28, 2000, in Book 1530C, page 169, in the Register's Office for Sullivan County, Tennessee.

This tenth page, as well as the nine numbered pages, are initialed by Mr. Eanes. The deed of trust was recorded on June 28, 2000, in the Sullivan County, Tennessee Register's Office.

On October 11, 2000, four months after his initial purchase, Mr. Eanes purchased the adjacent tract from the Horse Creek Village Homeowners Association. The warranty deed, which was duly recorded on October 24, 2000, sets forth the following description of the purchased property:

> BEING Lot 1 as shown on Survey of Common Area of Horse Creek Village Section A of record in the Register's Office for Sullivan County at Blountville, Tennessee, as Plat Book 50 at page 477, and being part of the same property conveyed to the Party of the First Part by deed date January 6, 1988, of record in the Register's Office aforesaid in Book 657C at page 39, to all of which reference is hereby expressly made.

Reference to the recorded survey at Plat Book 50, page 477 indicates that Lot 1 is the 115 Keeneland Court property.

On August 3, 2004, Mr. Eanes filed for bankruptcy relief under chapter 7, scheduling CIT as a secured creditor on the manufactured home and real property located at 115 Keeneland Court. Subsequently, the chapter 7 trustee initiated this adversary proceeding against CIT, asking the court to determine the validity and extent of the lien of CIT in the real property and manufactured home owned by the debtor. On March 7, 2006, both parties filed cross motions for summary judgment, agreeing that there are no genuine issues of material fact in dispute, but each asserting entitlement to judgment as a matter of law. The trustee argues in her motion that CIT has no interest in the debtor's property because its deed of trust fails to include a proper legal description in that it sets forth the wrong lot number. Alternatively, the trustee contends that any interest held by CIT is avoidable under 11 U.S.C. § 544(a)(1) or (3). In its summary judgment motion, CIT asserts that the reference in the granting clause of its deed of trust to the property address of 115 Keeneland Court, Kingsport, Sullivan County, Tennessee 37660 was sufficient to convey a valid security interest in the property and manufactured home located at that address. Alternatively, CIT maintains that if its deed of trust is invalid, the court should reform the instrument to correct the lot number as the error was due to the parties' mutual mistake.

Included in the parties' stipulations is the statement "it was intended that the debtor's loan

[from CIT] be secured by not only a lien against the property located at 115 Keeneland Court, Kingsport, Tennessee 37660, but also by lien on 1999 Silouette manufactured home." The parties also have stipulated that at all relevant times the debtor resided at, and his "mobile home was located on the lot located at 115 Keeneland Court."

II.

11 U.S.C. § 544(a)(1) and (3)[1] respectively vest the trustee as of the commencement of a bankruptcy case with the status, rights, and powers of a judicial lien creditor and a bona fide purchaser of real property under applicable state law. *First Am. Nat'l Bank v. Miller (In re Miller)*, 286 B.R. 334, 341-42 (citing 5 *Collier on Bankruptcy* ¶ 544.02 (15th ed. rev. 1999)). Tennessee law defines a bona fide purchaser as "one who buys for valuable consideration without knowledge or notice of facts material to the title." *Anderson Properties v. Inman*, 1995 WL 502669, *3 (Tenn. App. 1995) (quoting *Henderson v. Lawrence*, 369 S.W.2d 553, 556 (Tenn. 1963)). "As a hypothetical bona fide purchaser, the trustee under § 544(a)(3) is deemed to have conducted a title search, paid value for the property and perfected its interest as a legal title holder as of the date of the commencement of the case." *In re Miller*, 286 B.R. at 343 (quoting 5 *Collier on Bankruptcy* ¶ 544.08)). "However, the trustee's right as a bona fide purchaser does not override state recording statutes and permit avoidance of any interest of which a trustee would have constructive notice under state law." 5 *Collier on Bankruptcy* ¶ 544.08 (15th ed. rev. 2006).

---

[1] Section 544(a) of the Bankruptcy Code provides in part:
(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; [or]
    . . . .
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

> It is a familiar principle that every person taking a deed is fixed with notice of all recitals contained in the instruments making his chain of title.  The principle of equity is well established that a purchaser of land is chargeable with notice, by implication, of every fact affecting the title which would be discovered by an examination of the deed or other muniments of title of his vendor, and of every fact as to which the purchaser, with reasonable prudence or diligence, ought to become acquainted.  If there is sufficient notice contained in any deed or record, which a prudent person ought to examine, to produce an inquiry in the mind of an intelligent person, he is chargeable with knowledge or notice of the facts so contained.

*Blevins v. Johnson Co.*, 746 S.W.2d 678, 684-85 (Tenn. 1988) (quoting *Teague v. Sowder*, 114 S.W. 484, 489 (1908)).

Based on this line of authority, CIT argues in the present case that the debtor purchased the property at 115 Keeneland Court on May 27, 2000, that the subsequent chain of title would reveal its deed of trust, and that notwithstanding its description of the wrong lot, a party would be placed on inquiry notice of its lien due to the presence of the 115 Keeneland Court address in the granting clause of its deed of trust.[2]  The flaw in CIT's reasoning lies in its initial conclusion: that the debtor purchased the 115 Keeneland Court property on May 27, 2000.  To the contrary, while clearly the debtor *intended* to buy this tract and in fact contracted for this tract, the property conveyed to him in the warranty deed dated June 27, 2000, and duly recorded the next day was "Lot 2 . . . as shown on the plat recorded" and reference to the recorded survey reveals Lot 2 to be the 211 Kelso Court property.

"Tennessee law requires that instruments conveying an interest in property include a description of the property."  *CC Holdings (Tenn.) Inc. v. Tenn. Gas Transp. (In re Tenn. Gas Transp.)*, 169 B.R. 643, 644 (Bankr. M.D. Tenn. 1994) (citing *Tenn. Code Ann*. § 66-5-103). Under Tennessee law, "a valid deed must designate the land intended to be conveyed with reasonable certainty.  And the failure of a registered instrument to describe property intended to be conveyed leaves that property open to seizure by creditors of the grantor."  *Phoenix Mut. Life Ins. Co. v.*

---

[2] CIT argues that the legal description contained in the deed of trust is not actually a part of the deed of trust because it was on a tenth unnumbered page.  The court is unpersuaded by this argument as the tenth page, while unnumbered, is clearly a part of the deed of trust.  In fact, the tenth page is initialed by Mr. Eanes, signaling to one reviewing the deed of trust that the grantor, Mr. Eanes, recognized the tenth page as part of the deed of trust.

*Kingston Bank & Trust Co.*, 112 S.W.2d 381, 382 (Tenn. 1938) (internal citation omitted). "The test is whether a surveyor with the deed before him and with or without the aid of extrinsic evidence can locate the land and establish the boundaries." *Hill v. U.S. Life Title Ins. Co.*, 731 S.W.2d 910, 912 (Tenn. App. 1986).

Utilizing these principles, there was nothing in the June 27, 2000 deed to the debtor which even referred to the Keeneland Court tract, much less described or identified the property with reasonable certainty. To the contrary, the deed was a unambiguous conveyance of Lot 2, the Kelso Court property. The conveyance of legal title to the debtor of Lot 1, the Kenneland Court tract, took place with the deed dated October 11, 2000, and recorded on October 24, 2000. As with the first deed, this deed's only description of the property conveyed was by lot number and by reference to the recorded plat. Thus, someone conducting a title search of the Keeneland Court property would go first to the recorded deed which evidences conveyance to the debtor of this property, which in this case would be the October 11, 2000 deed. Nothing in this deed places a party on notice of any defect in the title and of any interest held by CIT. Moving forward from this date in the chain of title to the date of the bankruptcy would reveal no intervening liens or interests held on Lot 1. To a bona fide purchaser or judicial lien creditor on the date of bankruptcy, the debtor would appear to have a clean title on Lot 1, the Keeneland Court property. Furthermore, moving back in the chain of title would also raise no questions because the Horse Creek Homeowners Association was the grantor of both tracts of land to the debtor and the Homeowners Association obtained title to both tracts in the same transaction.[3]

Notwithstanding the lack of a recorded instrument in the Keeneland Court property's chain

---

[3]The derivation clause in the June 27, 2000 warranty deed to the debtor reads:
Being part of the same property conveyed to Horse Creek Village Homeowners Association, Inc. a Corp., Not for Profit from Federal Deposit Insurance Corp., a United States Corp., in its corporate capacity by Quitclaim Deed date 1/6/88, recorded 2/13/89, in Book 657C, Page 39 in the Register's Office for Sullivan County, Tennessee.
The derivation clause in the October 11, 2000 deed to the debtor similarly provides, "being part of the same property conveyed to the Party of the First Part by deed date January 6, 1988, of record in the Register's Office aforesaid in Book 657C at page 39, to all of which reference is hereby expressly made."

of title that would place a subsequent party on notice of CIT's interest, CIT would appear to have an equitable lien on this particular tract and the mobile home thereon. Assuming that both the debtor and the Horse Creek Homeowners Association intended a conveyance of the Keeneland Court property with the June 27, 2000 deed, the debtor had an equitable interest therein, notwithstanding the failure of the deed itself to convey legal title. *See Simon v. Chase Manhattan Bank (In re Zaptocky)*, 232 B.R. 76, 83 (6th Cir. 1999) (applying Ohio law) ("Where a grantee has given consideration but legal title was not conveyed because of defects in execution, the grantee obtains an equitable interest in the real property."). And because it has been stipulated that the debtor and CIT intended CIT's loan to the debtor to be secured by the 115 Keeneland Court realty and the manufactured home thereon, the defective deed of trust gave rise to an equitable lien in the property in favor of CIT. *See Hipps v. McKenzie*, 296 S.W.2d 838, 839 (Tenn. 1956) ( In order to create an equitable lien, "there must be an intent to make the particular property, real or personal, a security for the obligation."). In this regard, it must be emphasized that an equitable lien was all that CIT possessed. The debtor could convey to CIT no greater interest than he had in the property at the time. *See Burch v. McKoon, Billings & Gold, P.C.*, 2005 WL 2104611, *2 (Tenn. App. Aug. 31, 2005) ("It is elementary that the [grantors] could convey to [secured creditor] by Deed of Trust no greater interest, legal or equitable, in the property than that which they possessed . . . .")

Perhaps in recognition that its lien is subject to the avoidance by the trustee, CIT asks the court to reform its deed of trust based on mutual mistake. As noted by this court in a previous decision, courts of equity including bankruptcy courts may reform written instruments to effectuate the intent of the parties in the case of mutual mistake. *See In re Miller*, 286 B.R. at 339-341. This policy is subject to one notable exception: reformation may not occur if the rights of innocent third parties have intervened. A bankruptcy trustee with § 544(a) strong-arm powers is such an intervening third party. *Id.*

CIT asserts that notwithstanding an intervening third party, the court can still reform if the third party is on notice of the mistake, citing *In re Central & Southern Truck Lines, Inc.*, 33 B.R. 318 (Bankr. W.D. Tenn. 1983), and *Gulf Coast Investment Corp. v. McClanahan (In re Vezinot)*, 20 B.R. 950 (Bankr. W.D. La. 1982). In *Central*, the bankruptcy court refused to reform a mortgage which covered parcels #1 and #2, but inadvertently omitted parcels #3 and #4, based on the

conclusion that there was nothing in the mortgage which would place a third party on notice of the mistake. *In re Cent. & S. Truck Lines, Inc.*, 33 B.R. at 320. In *Gulf Coast*, the deed to the new owners and their subsequent mortgage to a lender erroneously described the property as "Lot 6, Block 43 " with a street address of "1910 6th Street," when in fact the correct description was "Lot 6, Block 42 " with a street address of "1910 16th Street." *Gulf Coast*, 20 B.R. at 952. Thereafter, the owners obtained a corrected deed but no action was taken to correct the mortgage instrument. Upon the owners' bankruptcy filing, the court avoided the mortgage pursuant to the trustee's § 544(a) powers because the property description was insufficient to place a third party on notice as to the identity of the property being mortgaged. *Id*. at 953-54.

In the present case, CIT asserts that in contrast to the facts in *Central* and *Gulf Coast*, its deed of trust plainly gives notice of a mistake in that it names 115 Kenneland Court in the granting clause but thereafter in the unnumbered tenth page describes Lot 2 with reference to the survey which reveals 115 Kenneland Court to be Lot 1. According to CIT, this inconsistency in the deed of trust "is sufficient notice to the world of the mistake" and of its claim of a security interest in 115 Kenneland Court.

The fallacy in CIT's argument is that CIT's deed of trust with its reference to 115 Keeneland Court would never show up in a title search of the Kenneland Court property because the deed of trust predated the recording of the debtor's receipt of legal title on October 24, 2000, and would therefore be outside the property's chain of title. The ambiguous deed of trust would show up only in the chain of title of Lot 2, the Kelso Court property, since it postdated the conveyance to the debtor of this property on June 27, 2000. "There is no constructive notice of transfers which are outside the chain of title." *In re Ryan*, 70 B.R. 509, 512 (Bankr. D. Mass. 1987), *rev'd on other grounds*, (citing 4 *Am. Law of Prop*. § 17.17 (1952)). "[O]ne searching the index has a right to rely upon what the index and recorded document discloses and is not bound to search the record outside the chain of title of the property presently being conveyed." *Koch v. Swanson*, 481 P.2d 915, 917 (Wash. App. 1971) (citing 45 Am. Jur. Records and Recording Laws § 82 (1943)). *See also Blevins*, 746 S.W.2d at 684 ("If . . . no facts appear either from the circumstances surrounding the transaction or on the face of the instrument itself that would give rise to actual or inquiry notice, then the party can be bound only by what can be shown by the constructive notice provided by the recorded

instruments in the chain of title."); *Gibson v. Flynn,* 1988 WL 119257, *4 (Tenn. App. Nov. 10, 1988) ("The record of a deed is constructive notice only to parties holding in the same chain of title, and a purchaser is not required to examine every record that might, by some possibility, affect real estate before he can safely take the title. . . . Plaintiffs are not required to examine deeds to adjoining property.").

Tennessee Code Annotated § 66-26-102 does provide that the effect of registration of the specified instruments which include a deed and deed of trust "shall be notice to all the world from the time they are noted for registration . . . ."[4] However, as explained by the Tennessee Court of Appeals in *Burch*:

> The seemingly all inclusive phrase "notice to all the world" is misleading. Persons whose recorded interest in the property predate rather than postdate the recorded instrument in question do not form a part of the "world.". . . The universal rule is that the record of an instrument is constructive notice to subsequent purchasers and encumbrancers only, and does not affect prior parties.

2005 WL 2104611, *6-7 (holding that recorded deed of trust outside the chain of title was not constructive notice).[5]

Based on the forgoing, this court concludes that reformation of CIT's equitable lien is inappropriate because the trustee is an intervening third party without notice. The trustee's interest as a judicial lien creditor and/or bona fide purchaser is superior to that of any equitable claim held

---

[4] "All of the instruments registered pursuant to § 66-24-101 shall be notice to all the world from the time they are noted for registration, as prescribed in § 8-13-108; and shall take effect from such time." *Tenn. Code Ann.* § 66-26-102.

[5] Although it is unnecessary for this court to resolve the issue due to the state of 115 Keeneland Court's chain of title, this court is not convinced that the inconsistency in CIT's deed of trust was sufficient to place subsequent parties on notice of CIT's lien claim and thereby defeat the trustee even if the debtor had not subsequently purchased the second tract. As noted, the June 27, 2000 warranty deed to the debtor made no reference to the 115 Keeneland Court property. Thus, if the debtor's second purchase had not taken place, legal title in the 115 Keeneland Court property would have remained in the name of the Homeowners Association and there would have been no recorded evidence of a lien or other interest conveyed by the Association. Simply put, the deed of trust from the debtor to CIT would not have been in the property's chain of title. The trustee with her § 544(a) powers would still prevail.

10

by CIT. *See In re Miller*, 286 B.R. at 342-43 (citing, *inter alia*, *Wolf v. Mahrdt (In re Chenich)*, 100 B.R. 512, 515 (BAP 9th Cir. 1987) (recognizing that chapter 7 trustee as hypothetical bona fide purchaser "takes title to the real property free from all equitable liens")). The trustee may avoid CIT's equitable lien pursuant to her powers under § 544(a).

### III.

Fed. R. Civ. P. 56(c), as incorporated by Fed. R. Bankr. P. 7056, mandates that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In this action, the parties previously announced that there was no dispute as to any fact and have stipulated the pertinent facts and documents. The court having determined that the trustee is entitled to a judgment against CIT avoiding its lien as a matter of law, an order so holding will be entered contemporaneously with the filing of this memorandum opinion.

# # #